UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
WOODROW FLEMMING,

                Plaintiff,

                MEMORANDUM
                AND ORDER

    -against-

                02CV6613(SLT)(LB)

CITY OF NEW YORK, BROOKLYN
HOUSE FOR MEN, RIKERS ISLAND,
NEW YORK HOSPITAL CORP.,
DR. SEIN THAN, DR. LAWRENCE
LEIBMAN, DR. SUNG KIM,
DR. JEFFREY LORIN, DR. RASHID
AYYUB, PRISON HEALTH SERVICE
and HOSPITAL AND HEATH CORP.,

                Defendants.
--------------------------------------------------X
TOWNES, U.S.D.J.

       In this action, *Pro Se* plaintiff Woodrow Flemming ("Plaintiff" or "Flemming") asserts claims under 42 U.S.C. § 1983 and state medical malpractice laws alleging that his constitutional rights were violated by the City of New York, Dr. Sein Than ("Than"), Dr. Jeffrey Lorin ("Lorin"), Dr. Sung Kim ("Kim") (collectively, the "Defendants"), on account of their failure to provide him with proper medical care while he was a detainee at the Queens House of Detention Center. Defendants seek to dismiss the Amended Complaint under Rule 12(b)(6), and Plaintiff moves for summary judgment. Upon consideration of the written submissions of each party, and for the reasons set forth below, Defendants' motion is GRANTED, Plaintiff's motion is DENIED, and the Amended Complaint is DISMISSED in its entirety.

I.    *Facts and Procedural History*

For the purpose of resolving the motion before the Court, all factual allegations in the Amended Complaint are presumed to be true. *See Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993).

On June 10, 2002, Plaintiff, then a pre-trial detainee, was seen by a doctor at the Queens House of Detention for Men ("QDC") for chest pain, breathing and heart problems. (Am. Complaint at 4.) Plaintiff was transferred to the Emergency Room at Mary Immaculate Hospital where he was seen by Dr. Rashid Ayyub who concluded that Plaintiff was "alright" but suggested further treatment if Plaintiff experienced further pain. (*Id.* at 4, 5 ¶ 3.) On June 11, 2002, Plaintiff saw a different doctor, whose name is unknown, and who presumably did not work at QDC.[1] That doctor reported that Plaintiff's heart rate and rhythm were regular. After returning to QDC, Plaintiff was seen by a doctor on the premises who authorized Plaintiff to return to his housing facility. (Am. Complaint at 4 (Plaintiff says he visited a doctor who "clear[ed] him for his house").) "Some time later...in late June 2002," Plaintiff was seen by Dr. Lorin at QDC and told that he was "ok." (*Id.*) Plaintiff complains that Dr. Lorin, "did not put his hand" on Plaintiff but instead called the VA hospital, discontinued Plaintiff's medication and said that no further testing was required. (*Id.* ¶ 8.)

Attached to Plaintiff's Amended Complaint is a letter dated July 26, 2002, addressed to Dr. Kim, a physician at Prison Health Services Inc. The letter was signed by Lawrence S. Liebman, M.D., who earlier interpreted a radiographic examination of Plaintiff's chest, opined that Plaintiff's heart was within normal limits, and suggested a "Chest CT" for

---

[1] It is presumed that this doctor did not work at QDC because the next sentence in Plaintiff's Amended Complaint is "Plaintiff was sent back to [QDC]." (Am. Complaint at 4.)

further evaluation. (Am. Complaint Ex. A.) Plaintiff alleges that Dr. Than, too, suggested further evaluation that Defendants ignored. (*Id.* ¶ 12.)

On July 31, 2002, Plaintiff complained of pain in his chest and legs and was seen by Dr. Than, who discovered Plaintiff's heart to be beating irregularly and his legs to be swollen. (*Id.*) Dr. Than called an ambulance and Plaintiff was admitted to the hospital. (*Id.*) It is not clear from the record exactly what Plaintiff's diagnosis was upon admittance to the hospital, though he refers to it as his "heart failure." (Am. Complaint at 7 ¶ 1.)

Plaintiff now alleges that the Defendants knew or should have known that Liebman recommended a CT scan, and that they should have ensured that Plaintiff received same. (*Id.* ¶ 10.) Plaintiff asks whether his "heart failure" would have occurred had he been given a CT or whether "he would had [*sic*] last and went longer without the hart [*sic*] failure." (Am. Complaint page 7 (¶1); *see also id.* at 9 (Defendants "denied [Plaintiff] the proper care that may have cause [*sic*] him not to have a hart [*sic*] failure").) Construed liberally, the Amended Complaint states causes of action against the Defendants under 42 U.S.C. § 1983 and against Doctors Than, Lorin and Kim for medical malpractice. The Defendants move to dismiss pursuant to Rule 12(b)(6) and plaintiff cross-moves for summary judgment.

II. *Discussion*

A. *Defendant's Motion to Dismiss*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint where the plaintiff has failed to state a claim upon which relief can be granted. When evaluating a Rule 12(b)(6) motion, the court must ascertain, after presuming all factual

3

allegations in the pleading to be true and viewing them in the light most favorable to the plaintiff, whether or not the plaintiff has stated any valid ground for relief. *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993). The court may grant a Rule 12(b)(6) motion only where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

1.  *Section 1983 Claims as to Defendants Than, Kim and Lorin*

"Every person who, under color of any statute, ordinance, regulation, custom, or usage...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. In particular, the Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."

Under the Due Process Clause, pre-trial detainees may not be subjected to conditions and restrictions that amount to "punishment" without due process of law. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, "[n]ot every disability imposed during pre-trial detention amounts to 'punishment' in the constitutional sense." *Id.* at 537. A policy or practice constitutes "punishment" when there is "a showing of expressed intent to punish on the part of detention facility officials, when there is no legitimate non-punitive government purpose to which the restriction or condition may rationally be connected, or when the restriction is

4

excessive in light of that alternative purpose." *Curry v. Kerik*, 163 F. Supp. 2d 232, 236 (S.D.N.Y. 2001) (*citing Bell*, 441 U.S. at 538).

Although the Supreme Court has not yet settled the question of what standard to employ in cases in which a pre-trial detainee sues over conditions of confinement, *see Rivera v. State of New York*, 1999 WL 13240, at *4 (S.D.N.Y. Jan. 12, 1999), courts in this Circuit have regularly applied the Eighth Amendment standard applicable to convicted prisoners. *See, e.g., Bourdon v. Roney*, 2003 WL 21058177, at *10 (N.D.N.Y. Mar. 6, 2003); *Curry*, 163 F. Supp. 2d at 236; *Butler v. Westchester County*,, 2000 WL 335539, at *5 (S.D.N.Y. Mar. 30, 2000); *Rivera*, 1999 WL 13240, at *5. Under this standard, Plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" to establish a constitutional violation for inadequate medical care. *Estelle v. Gamble*, 429 U.S. at 105. "Deliberate indifference" exists when a defendant "knows of and disregards an excessive risk to inmate health or safety"; when the defendant is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and … draw[s] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994),

In light of this standard, a pre-trial detainee's complaint regarding the conditions of his confinement must meet both an objective and a subjective standard. To meet the objective standard, the deprivation must be sufficiently serious to deny the plaintiff "a minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). Crucial considerations in determining whether a deprivation is "sufficiently serious" include "the duration of the condition and the potential for serious physical harm." *Whitted v. Lazerson*, 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998). To meet the subjective standard, the plaintiff must

5

allege that the defendants "had a sufficiently culpable state of mind amounting to at least deliberate indifference." *Dawes v. Walker*, 239 F.3d 489, 493-94 (2d Cir. 2001).

Assuming, *arguendo*, Plaintiff is able to meet the objective standard, his claim must still be dismissed because he fails to show that any of the doctors possessed the culpable state of mind required to maintain a deliberate indifference claim against them. As stated earlier, "[t]he required state of mind, equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hemmings v. Gorczyk*, 123 F.3d 104, 108 (2d Cir. 1998) (*quoting Farmer*, 511 U.S. at 837). Additionally, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. The Eighth Amendment standard is a higher one, and "[a]n act of medical malpractice will amount to deliberate indifference only if the malpractice involves culpable recklessness, *i.e.*, an act or failure to act...that evinces a conscious disregard of a substantial risk of serious harm." *Nelson v. Rodas*, 2002 WL 31075804, at *12 (S.D.N.Y. Sept. 17, 2002). This standard has not been met in this case.

With respect to Dr. Than, Plaintiff's allegations are that Dr. Than received a letter from Dr. Liebman, Amended Complaint at 8 ¶10, suggested further evaluation in his notes to Plaintiff's file, and did not follow up thereon. (Am. Complaint at 9 ¶14.) Regarding Dr. Lorin, Plaintiff complains that Lorin did not examine him, told Plaintiff he was "ok," discontinued his medication and did not recommend further testing, and complains that Dr. Kim failed to follow up on Dr. Liebman's suggestion that Plaintiff receive a Chest CT. (*Id.* at 8.)

6

These facts, even interpreted liberally, do not allege the type of "obduracy and wantonness" that is required to sustain a claim of deliberate indifference. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause"); s*ee also Davidson v. Talbot,* 2005 WL 928620, at *8 (N.D.N.Y. Mar. 31, 2005) (Report and Recommendation of Magistrate Judge recommending, *sua sponte*, dismissal, with prejudice, of §1983 claim against health care provider that denied *pro se* plaintiff an MRI because*, inter alia*, plaintiff failed to allege deliberately indifferent state of mind, despite facility doctor's approval of MRI); *Johnson v. Dep't of Corrections*, 1995 US DIST LEXIS 3457, at *6-7 (S.D.N.Y. Mar. 21, 1995) (granting motion for summary judgment where defendant's failure to ensure plaintiff received timely MRI resulted in damage requiring replacement of plaintiff's hip and finding that, "[w]hile use of an MRI...might have facilitated the earlier discovery of plaintiff's injury, the Eighth Amendment does not mandate the use of any particular medical technology or course of treatment." ) (*quoting Estelle v. Gamble*). Therefore, Plaintiff's claim against Doctors Than, Kim, and Lorin are dismissed.

2. *Section 1983 Claims City Defendant*

Under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694-5. "Therefore, to prevail

against municipal defendants, first, a § 1983 plaintiff must prove the existence of a municipal policy or custom that caused his injuries, and second, plaintiff must establish a causal connection...between the policy and the deprivation of his constitutional rights." *Sarus v. Rotundo*, 831 F.2d 397, 400 (2d Cir. 1987).

In the instant case, Plaintiff has made no allegations that there exists a policy or custom in the City of New York that caused his alleged injuries, or that his July 31, 2002 hospitalization is at all related to the fact that he did not received the CT scan recommended in his file. Plaintiff's claim against the City of New York is therefore dismissed, despite the Court's liberal construction of his Amended Complaint. *See Batista v. Goord*, 2005 WL 2179420, at *3 (N.D.N.Y. Aug. 28, 2005) ("[A]lthough the work product of *pro se* litigants should be generously and liberally construed, a *pro se* litigants failure to allege either specific facts or particular laws that have been violated renders an attempt to oppose defendants' motion ineffectual.") (internal citation omitted).

B.      *Medical Malpractice Claim*

Title 28 U.S.C. § 1367(c)(3) "permits a district court in its discretion, to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims." *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 103 (2d Cir. 1988). Having dismissed Plaintiff's civil rights claims, this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims.[2]

---

[2] However, the Court notes that, in any event, Plaintiff's medical malpractice claims are without merit. "In order to present a prima facie case of medical malpractice [under New York law], a plaintiff must show, *inter alia*, that his or her injuries proximately resulted from the

8

C.  *Plaintiff's Motion for Summary Judgment*

In response to Defendant's motion to dismiss, Plaintiff filed a motion for summary judgment. Though, as the moving party, Plaintiff bears the burden of showing that there are no genuine issues of material fact warranting summary judgment, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), Plaintiff's motion (and accompanying documents) do little more than recite the allegations of the Amended Complaint, rehash motions to vacate and reconsider the Court's March 30, 2005 dismissing Dr. Liebman (which Plaintiff has asked of this Court no fewer than five times since issuance of the order), and state in a conclusory and prolix manner that under *Bell v. Wolfish*, 441 U.S. 540 (1979), he is entitled to relief.

The burden already met by Defendants in illustrating Plaintiff's failure to state a claim exceeds that which is required of Defendant to defeat Plaintiff's motion for summary judgment. Having failed to withstand Defendants' Rule 12(b)(6) motion for the reasons stated above, *see supra*, II(A), Plaintiff's motion for summary judgment must be denied. *See, e.g., McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) ("A party endeavoring to defeat a lawsuit

---

defendant's departure from the required standard of performance." *Tonetti v. Peeksill Comm. Hosp.*, 148 A.D.2d 525, 525 (N.Y. App. Div. 1989). In 2003, Plaintiff unsuccessfully filed a claim in the Southern District of New York against a hospital on similar facts. *See generally Flemming v. Velardi*, 2003 21756108, at *3 (S.D.N.Y. July 30, 2003). That court found that "[e]ven construing plaintiff's claims broadly, he does not state a medical malpractice clam, as plaintiff has not alleged either that the doctors' refusals to provide him with MRIs, CT scans, or a referral to a neurologist deviated from accepted medical practice or that he suffered any harm because he did not receive these tests or the referral...[E]ven if plaintiff could make out a prime facie case for medical malpractice under state law, I would decline to take supplemental jurisdiction over it." *Id.*; *see also Hylick v. Halweil*, 112 A.D.2d 400, 401 (N.Y. App. Div. 1985) ("Although plaintiff at bar adduced testimony that defendant failed to perform certain diagnostic tests which might have obviated the need for a surgical intervention, there was no evidence that his failure to perform those tests, nor that performance of the operations itself, represented a departure from accepted medical practice.").

by a motion to dismiss for failure to state a claim has a higher burden than a party proceeding on a motion for summary judgment.") (*citing* Moore's Federal Practice §56.30[3][b]).

D. *Remaining Defendants*

The pending motion to dismiss was submitted on behalf of only Defendants Than, Kim, Lorin and the City of New York, collectively referred to in the motion as the "City Defendants." However, the Amended Complaint names other defendants who, as far as this Court is aware, have yet to be formally dismissed. Plaintiff has identified these defendants as "Brooklyn House for Men," "Rikers Island," "New York Hospital Corporation," "Prison Health Service," and "Hospital and Health Corporation." (*See* Am. Complaint.)

"Section 396 of the New York City Charter provides that all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." *Rivera v. Rikers Island, C-74*, 2004 WL 1305851, at *1 (S.D.N.Y. May 13, 2004) (*quoting* N.Y. City Charter ch. 17 § 396). Facilities operated by the New York City Department of Corrections are agencies of the city and cannot be sued. 2004 WL 1305851, at *1. Therefore defendants "Brooklyn House for Men" and "Rikers Island" are hereby dismissed, as they are already represented in this litigation by the City of New York. Defendants "New York Hospital

Corporation," and "Hospital and Health Corporation,"[3] ("HHC") are also represented by the City of New York and any claims against them are dismissed.

As stated earlier, Dr. Liebman was dismissed by this Court on March 30, 2005, on account of Plaintiff's failure to state a claim against him upon which relief could be granted. The remaining defendants named in the Amended Complaint were dismissed pursuant to a stipulation executed by then-assigned Judge Garaufis on July 9, 2004. (*See* docket at 35.)

E.   *Motion for Recusal*

Though Plaintiff has not expressly moved for the undersigned's recusal, he has submitted numerous letters accusing this Court of misconduct, and, most recently, has submitted as an exhibit to his motion for summary judgment a photocopy of the acknowledgment he received from the Court of Appeals for the Second Circuit after he filed a Judicial Misconduct Complaint in protest of the Court's earlier orders in this case. Based on Plaintiff's *pro se* status, his complaint of Judicial Misconduct, and the letters to this Court from Plaintiff accusing the Court of failing to afford him leniency as a *pro se* party, *see*, *e.g.*, docket at 86, 88, the Court will treat these submissions a motion for recusal in an attempt to read into Plaintiff's submissions "the strongest arguments that they suggest," *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000), notwithstanding the irony of Plaintiff's allegation that this Court has failed to afford him leniency in this case.

---

[3] HHC is a municipal corporation that operates several New York City area hospitals. *Rookard v. Health and Hospitals Corp.*, 710 F.2d 41, 45 (2d Cir. 1983).

11

"A judge shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned." *United States v. Yousef*, 327 F.3d 56, 170 (2d Cir. 2003) (*quoting* 28 U.S.C. § 455(a)). "Where [s]he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," recusal is also appropriate. 28 U.S.C. § 455(b)(1).

The Second Circuit "has interpreted 28 U.S.C. § 455 as asking whether an objective, disinterested observer fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal, or alternatively, whether a reasonable person, knowing all the facts would question the judge's impartiality." 327 F.3d at 170. Here, at best, Plaintiff argues that the Court did not give him leeway as a *pro se* party. However, Plaintiff's argument is based on the Court's failure to give him notice under Local Rule 56.2 (requiring special notice for a *pro se* party opposing summary judgment). As stated in the Court's order of August 29, 2005, *see docket* at 87, Plaintiff has yet to oppose a motion for summary judgment, a fact which makes Local Rule 56.2 irrelevant to this action. The remainder of Plaintiff's arguments involve his dissatisfaction with the March 30, 2005 order dismissing Liebman, and fail to establish any bias on the part of this Court. This Court has entertained a rapid succession of motions to vacate filed by Plaintiff, including motions to vacate decisions denying prior motions to vacate, and has frequently explained to Plaintiff the legal reasoning behind this Court's decisions. *See* Orders of July 20, 2005, August 29, 2005, and October 26, 2005. Plaintiff's suggestion that the decisions at issue result from judicial misconduct is an allegation not only untenable, but incredible. *See United States v. Yousef,* 327 F.3d at 170 (upholding district court's denial of defedants' motion to recuse because, *inter alia*, "judicial

12

rulings and the opinions formed by judges on the basis of facts introduced in the course of the proceedings almost never constitute a valid basis for a bias or partiality motion"). Therefore, Plaintiff's motion for recusal is denied.

III.     *Conclusion*

Because Plaintiff has failed to establish that he suffered a deprivation of sufficiently serious magnitude to constitute a denial of Due Process, his claims under § 1983 against Doctors Than, Kim and Lorin are hereby dismissed. Plaintiff's failure to plead the existence of any municipal policy or custom responsible for his alleged injuries requires dismissal of his claims against the City of New York. For the same reasons, Plaintiff's motion for summary judgment is denied. Finally, to the extent Plaintiff presented a motion for recusal, that motion is also denied, as there is neither evidence here that the Court is biased nor the suggestion that justice is or might be circumvented. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. The Clerk of the Court is directed to close the case.

**SO ORDERED.**

                                                                                       S/

Dated: March 31, 2006                              SANDRA L. TOWNES
       Brooklyn, NY                              UNITED STATES DISTRICT JUDGE